

ORIGINAL

NO. PD-1482-14

NO. PD-1483-14

NO. PD-1484-14

RECEIVED IN
COURT OF CRIMINAL APPEALS

JAN 30 2015

Abel Acosta, Clerk

IN THE

COURT OF CRIMINAL APPEALS OF TEXAS

---

LUKE ADAM STANTON, SR., Appellant/Petitioner

V.

THE STATE OF TEXAS, Appellee/Respondent

FILED IN
COURT OF CRIMINAL APPEALS

JAN 30 2015

Abel Acosta, Clerk

---

ON DISCRETIONARY REVIEW FROM THE

EIGHTH DISTRICT COURT OF APPEALS

EL PASO, TEXAS

CAUSE NO. 08-12-00293-CR, 08-12-00294-CR, AND 08-12-00295-CR

---

FROM APPEAL FROM THE 211th JUDICIAL DISTRICT COURT

DENTON COUNTY, TEXAS

CAUSE NO. F-2011-1911-C, F-2011-1912-C, AND F-2011-1913-C

===========================================================================

PETITION FOR DISCRETIONARY REVIEW

---

LUKE STANTON #1830011
TDCJ - MICHAEL UNIT
2664 FM 2054
TN. COLONY, TEXAS 75886

Appellant/Petitioner

ORAL ARGUMENT IS REQUESTED

# TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES ii

INDEX OF AUTHORITIES (Cont.) iii

    Constitution  Provisions

    Rules of Evid.

    In the Record

STATEMENT REGARDING ORAL ARGUMENT 1

STATEMENT REGARDING CASE 2

STATEMENT OF PROCEDURAL HISTORY 3

QUESTIONS PRESENTED FOR REVIEW 3

    1. Did the EIGHTH District Court of Appeals error in its opinion that the trial court did not abuse its discretion by excluding evidence under Brayd, that the Polygraph Test questions are not evidence, even after the State "Opened the Door" to reliable and relevant evidence. (RR4: 174-175)

    2. Did the EIGHTH District Court of Appeals error in its opinion that the trial court did not abuse its discretion under Rules of Evidence, by excluding Investigator Toby Crow's expert opinion testimony, when the Polygraphic Examination and their Results could be basis of the experts opinion.(RR4:174-175)

ARGUMENT 3

    Question No. ONE 4

        Factual Background 4

        Argument and Authorities 4

    Question No. TWO 9

        Factual Background 9

        Argument and Authorities 10

PRAYER FOR RELIEF 14

CERTIFICATE OF SERVICE 14

APENDIX

    Eighth District Court of Appeals (October 10,2014) JUDGMENT "A"

    Eighth District Court of Appeals (October 10,2014) OPINION "B"

# INDEX OF AUTHORITIES

Page

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)    7,8

Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710 (1993)    9

Daubert v. Merrell Dow Pharmaceuticals, Inc, 509 U.S. 579, (1993)    10,11

Davis v. State, 329 S.W.3d 798, 813-14 (Tex.Crim.App 2010)    12

Decker v. State, 717 S.W.2d 903, 908 (Tex.Crim.App. 1983)    5

Eddings v. Oklahoma, 455 U.S. 104, 102S.Ct. 869 (1982)    5

E.I. duPont de Nemours & Co. v. Robinson, 923 S.W.2d 549 (Tex. 1995)    12

General Electrict Co. v. Joiner, 522 U.S. 136,143, 118 S.Ct. 512 (1997)    11

Hartman v. State, 946 S.W.2d 60 (Tex.Crim.App. 1997)    11

Hernandez v. State, 60 S.W.3d 106 (Tex.Crim.App. 2001)    5

Homes v. South Carolina, 547 I.S. 319,324; 126 S.Ct. 1727 (2006)    13

Hoppes v. State, 725 S.W.2d 536 (FIRST District Court of Appeals)    5

Johnson v. State, 743 S.W.2d 307,309 (Tex.App.-San Antonio 1987)    5

Kelly v. State, 824 S.W.2d 568,572 (Tex.Crim.App. 1992)    11,12

King v. State, 953 S.W.2d 266,271 (Tex.Crim.App. 1997)    3

Kotteakos v. U.S., 328 U.S. 750,776; 66 S.Ct. 1239,1557,1572 (1946)    3

Kyles v. Whitley 514 U.S. 419, 433-34; 115 S.Ct. 1555, 1565-66 (1995)    8

Leonard v. State, 385 S.W.3d 570,572 (Tex.Crim.App. 2012)    8
           2012 Tex.Crim.App. LEXIS 477 at *5    13

Lockett v. Ohio, 438 U.S. 586,604; 98 S.Ct. 2954, 2964-65 (1978)    5

Long v. State, 10 S.W.3d 389 ((Tex.App.-Texarkana 1999)    4

Lucas v. State, 479 S.W.2d 314,315 (Tex.Crim.App. 1972)    6

Mak v. Blodgett, 507 U.S. 951; 113 S.Ct. 1363 (1993)    8,9

Morales v. State, 32 S.W.3d 862.865 (Tex.Crim.App 2000)    12

Nicols v. State, 378 S.W.2d 335,337 (Tex.Crim.App. 1964)    9

Ramey v. State, No. AP-75678, 2009 Tex.Crim.App.LEXIS 124 at *44-45    12

Russean v. State, 291 S.W.3d 426,438 (Tex.Crim.App. 2010)    12

Sauceda v. State, 192 S.W.3d 116,123 (Tex.Crim.App. 2001)    5

Sherman v. State, 20 S.W.3d 96 (Tex.App.-Texarkana 2000)    5

Thomas v. State, 841 S.W.2d 399 (Tex.Crim.App. 1992)    9

Tillman v. State, 2011 Tex.Crim.App.LEXIS 1343    13

U.S. v. Bagley, 473 U.S. 667,682; 105 S.Ct. 3375, 3383-84 (1985)    8

U.S. v. Sipe, 388 F.3d 471 (5th Cir. 2004)    8

Webb v. State, 129 S.W.3d 126,129 (Tex.Crim.App. 2004)    8

INDEX OF AUTHORITIES

(Cont.)

Page

Wood v. Bartholomew, 516 U.S. 1, 10; 116 S.Ct. 7  (1995)          8

Wyrick v. Fields, 459 U.S. 42 (1982)                             6

Constitution Provisions

United States Constitution Amendment Fourteenth (14th)          8,9

Rules of Evidence

Tex. R. Evid.      107                                           5

Tex. R. Evid.      702                                     11,12,13

Tex. R. Evid.      703                                   6,10,12,13

Tex. R. Evid       705                                      6,10,13

Tex. R. Evid.      705(b)                                       11

Fed. R. Evid.      702                                          11

In the Records

Appellant's Brief (Tex.App.)      (App.Bf: 4-7)                 10

Court Clerk Record                ( C.R. )

    (C.R. at 10; 119; 212-23; 152-54; 166-68)                   2

Court of Appeals Opinion          (COA OPINION: 6-10)           3

Reporters Records                 ( RR )

    (RR2:1)(RR3:1)(RR4:1)(RR5:1)(RR6:1; 30-32)(RR8:13-14; 13-16)     2

    (RR4:174-175)                                               3

    (RR2:8) (RR4:167-183; 171-173; 174-175; 177-179; 183-184)     4,6,9,10

    (RR4:185)                                                 5,11

    (RR4:167)                                                   6

    (RR3:38) (RR4:49)                                           7

    (RR4:185)                                                  11

State's Brief    (Tex.App.)    (St.Bf:7-8; 9-10; 11)        4,5,9,10,11

APENDIX          A     B

Court of Appeals'        (October 10, 2014)      Judgment OPINION's

08-12-00293-CR           08-12-00294-CR          08-12-00295-CR

iii

NO. PD-1482-14

NO. PD-1483-14

NO. PD-1484-14

IN THE

COURT OF CRIMINAL APPEALS OF TEXAS

LUKE ADAM STANTON, SR., Appellant/Petitioner

V.

THE STATE OF TEXAS, Appellee/Respondent

ON DISCRETIONARY REVIEW FROM THE

EIGHTH DISTRICT COURT OF APPEALS

EL PASO, TEXAS

CAUSE NOS. 08-12-00293-CR, 08-12-00294-CR, AND 08-12-00295-CR

FROM APPEAL FROM THE 211th JUDICIAL DISTRICT COURT

DENTON COUNTY, TEXAS

CAUSE NOS. F-2011-1911-C, F-2011-1912-C, AND F-2011-1913-C

==================================================================

PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Luke Adam Stanton, Sr., Appellant/Petitioner, Pro se, petitions the Court of Criminal Appeals to review the decision affirming his judgment and sentence in Court of Appeals cause numbers: 08-12-00293-CR, 08-12-00294-CR, and 08-12-00295-CR.

STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that oral argument would assist the Court in discerning the applicable caselaw and the pertinent fact. Petitioner, therefore, request oral argument.

- 1 -

## STATEMENT OF THE CASE

This case involves a prosecution for multiple sexual abuse charges. Luke Adam Stanton, Sr., Petitioner, was indicted on September 29,2011, and charged with:

```
(F-2011-1911-C) Count I .....Sexual Assault (C.R. at 119)
                       Tex. Penal Code § 22.011(a)(2)(C)

                Count II-IV..Indecency with a Child
                       Tex. Penal Code § 21.11(a)(1)

(F-2011-1912-C) Count I ..Continuous Sexual Abuse of a
                            Young Child (C.R. at 10)
                       Tex. Penal Code § 21.02(b)

                Count II-IV...Indecency with a Child
                       Tex. Penal Code § 21.11(a)(1)

(F-2011-1913-C) Count I ......Indecency with a Child
                       Tex. Penal Code § 21.11(a)(1)
                                            (C.R. at 10)
```

The indictment contained an additional allegation the Petitioner had been convicted of a Felony Offence of Conspiracy to distrabute cocain. (8 R.R. at 13-14)

A jury trial was conducted on August 20-24, 2012. (2 R.R. at 1);(3 R.R. at 1);(4R.R. at 1);(5R.R. at 1);(6R.R. at 1). The jury found Petitioner guilty on each counts. (6R.R. at 30-32). And the jury assessed a punishment of:

```
(F-2011-1911-C) Count I .................... 15 Years TDCJ
                Count II-IV ..15 Yrs each Count consec.

(F-2011-1912-C) Count I ...40 Yrs consec to F-2011-1911-C
                Count II-IV ..15 Yrs each Count consec.
```

(F-2011-1913-C) Count I ...10 Yrs consec to F-2011-1912-C for a total of One Hundred and Fifty Five (155) Years' confinement in the Institutional Division of the Texas Department of Criminal Justice System. (8R.R. at 13-16; C.R. at 166-68; 152-54; 121-23)

The trial court imposed sentences on August 24,2012. And, Appellant/Petitioner filed Notice of Appeal on August 24,2012.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals for the Eighth District of Texas issued an OPINION on Friday, October 10,2014. The Court AFFIRMED Petitioner's judgments and Sentences:                    STANTON V. STATE

    No. 08-12-00293-CR, 2014 Tex.App.LEXIS ___, (Tex.App.-El Paso 2014)

    No. 08-12-00294-CR, 2014 Tex.App.LEXIS ___, (Tex.App.-El Paso 2014)

    No. 08-12-00295-CR, 2014 Tex.App.LEXIS ___, (Tex.App.-El Paso 2014)

Appellant/Petitioner did not file a Motion for Rehearing.

Appellant/Petitioner did timely file a Petition for Discretionary Review, additionally, filed a Motion for Extension of Time.

## QUESTIONS PRESENTED FOR REVIEW

1) Did the EIGHTH District Court of Appeals error in its opinion that the trial court did not abuse its discretion by excluding evidence under Brady, that the Polygraphic test questions are not evidence, even after the State "opened the door" to reliable and relevant evidence.(RR4:174-75)

2) Did the EIGHTH District Court of Appeals error in its opinion that the trial court did not abuse its discretion under Rules of Evidence, by excluding Investigator Toby Crow's expert opinion testimony, when the Polygraphic Examination and their Results could be the basis of the experts opinion. (RR4:174-175)

## ARGUMENT

This case presents two Constitutional questions ripe for review. In overruling Petitioner's First point, which concerns Polygraphic Evidence, the Eighth District Court of Appeals issued a decision that fails to address the most pertinent factors, and thereby misapplies the relevant standard. In overruling Petitioner's Second point, which concerns the Investigators expert opinion, as evidence. These exclusions of evidence are in violation of Petitioner's Constitutional Rights, affirming the trial court's decision to allow the State to present certain evidence. Here, the Eighth District Court of Appeals OPINION meaningfully discussess only one factor; the polygraph examinations being inadmissible in Texas Criminal Court Procedures. (COA Opinion: 6-10) But does not address polygraphic evidence to an experts opinion as the Petitioner has below. Petitioner's substantial right is affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." King v. State, 953 S.W.2d 266,271 (Tex.Crim.App. 1997)(citing Kotteakos v. U.S., 328 U.S. 750,776)

## QUESTION NO. ONE

Did the EIGHTH District Court of Appeals error in its opinion that the trial court did not abuse its discretion by excluding evidence under Brady, that the Polygraphic Test Questions are not evidence, even after the State "opened the door" to reliable and relevant evidence. (RR4:174-175)

## Factual Background

In the brief filed in the Court of Appeals, the State summerized its argument as follows: NO error is shown in the denial of Appellant's Polygraph into evidence at trial. And, the door can be opened to such evidence when a false impression of evidence is left.

State's brief in the Court of Appeals, SUMMARY OF THE ARGUMENT, Pg 7-8

The argument presented in support of this summary is:

The error claimed that the polygraph portion was redacted from Appellant's video interview which showed Investigator Crow asking Appellant if he would take a polygraph test. Thereafter, Appellant wanted to induce the Polygraphic Evidence that Investigator Crow sought when abandonment of his investigation, not the polygraphic results. (RR4:171-173)

State's brief in Court of Appeals, ARGUMENT, Pg 9-10

## Argument and Authorities

It is undisputed during trial Investigator (Inv.) Toby Crow testified about his 2009 investigation of allegations of improper sexual conduct made by R.B. and K.B. (RR4:167-183)(St.Bf:9) Appellant's stepdaughters. However, never mentioned that he requested Appellant to take a polygraph test. But incredibily, immediately thereafter the investigation, abandoned his case.

Appellant's contentions, to introduce the questions through Inv. Crow, of "Appellant's sexual history polygraph – that included all alleged aspects of the Appellant's sexual behavior and the victims list that accurred prior to the offenses of convictions". At the pre-trial hearing, the State filed a motion in Limine seeking to exclude the polygraph evidence ... the trial court granted the Motion.(RR2:8)(St.Bf:9) But then, during trial, the State "opened the door" to such evidence when Inv. Crow testified on direct "the only thing I had the benefit of ... was the testimony of ..., there was no other evidence."(RR4:183) Appellant contends that the specific question asked, and the techniques employed by the polygraph examiner, would demonstrate for the jury exactly how Appellant answered, particularly "the jury may have been left with the false impression that Appellant did not answer specific questions [the polygraph test]. Long v. State, 10 S.W.3d 389 (Tex.App.-Texarkana 1999). When the State asked its own

- 4 -

witness about a prior bad act, the trial court erred in not allowing the defendant to cross-examine the witness on details of that bad act. Sherman v. State, 20 S.W.3d 96 (Tex.App.-Texarkana 2000)

Under Tex.R.Evid. 107 - this Court of Criminal Appeals clarified the rule of optional completeness eight years before Appellant's trial in Sauceda v. State, 192 S.W.3d 116,123 (Tex.Crim.App. 2004). This Court held: "the plain language of [Tex.R. of Evid] Rule 107 indicates that in order to be admitted under the rule, the omitted portion of the statement must be 'on the same subject' and must be "necessary to make it fully understood.'" Id. In other words, in clear contradiction to the prosecutors "fear," the polygraph evidence could have been submitted, it does not show the complainant's made any false allegations in their statements, and its basis induces the alleged sexual behavior of Appellant from the victims list that allegely accurred, such evidence did not automatically make the polygraph inadmissible. Notwithstanding, the State, by introducing the subject matter covered by evidence that might be inadmissible under the exclusionary rule, the party waives any complaint about admission of the evidence. Hernandez v. State, 60 S.W.3d 106 (Tex.Crim.App. 2001); Decker v. State, 717 S.W.2d 903,908 (Tex.Crim.App. 1983). Here, in the instant case, Appellant, in raising the exclusionary rule issue contested the matter before the trial Judge to seek submission of the polygraph issue to the jury,(Johnson v. State, 743 S.W. 2d 307,309 (Tex.App. San Antonio 1987, pet ref'd).). However, trial Judge still ruled, "I'm going to keep out the polygraph information."(RR4:185).(St.Bf:11)

In Hoppes, 725 S.W.2d at 536, The First District Court of Appeals affirmed the judgment to "the use of specific statements from the polygraph examination for impeachment purposes was proper and did not open the door to disclose to the jury the results of the examination." Id. at 536. Additionally, in Lockett v. Ohio, 438 U.S. 586,604; 98 S.Ct. 2954, 2964-65; 57 L.Ed.2d 973 (1978); and Eddings v. Oklahoma, 455 U.S. 104; 102 S.Ct. 869; 71 L.ED.2d 1 (1982), under controlling United States Supreme Court authority relaxed standards govern the admission of mitigating evidence in trial. Under these relaxed standards, mitigating polygraph evidence may be admitted if (1) the prosecutor can cross-examine Inv. Crow's expert opinion on the reliability of the results, and (2) the trial Judge is convinced that Inv. Crow's expert testimony, to his direct involvement with the polygraph examiner was qualified and the exam was conducted under proper conditions.

Here, the case at bar, the trial courts heard Inv. Crow's resume as the expert "primary Investigator" with "Twenty-Seven years" at the Denton County Sheriff Office as the "GURU" Juvenile investigator in crimes.(RR4:167) Therefore the trial Judge and the State prosecutors knew that their nontesting expert had sufficient qualifications and reliable data, as a source normally accepted in that field of expertise.(Tex.R.Evid. 703 and 705) to testify to the polygraph evidence. In 2009 Inv. Crow studied and formed an independent opinion into his investigation, with the polygraph examiners report and the polygraph test questions before abandonment of his case as agreed upon with the Appellant. As in Lucas, the State requested defendant to submit to a polygraph exam, made an agreement that if he "passed" the test his case would be dismissed, and that the results of the test showed that he was not guilty. Thereafter, the Texas. Court of Criminal Appeals held that the State should be allowed to introduce evidence that the defendant, in fact, did not pass the polygraph test. Lucas, 479 S.W.2d 314,315. In the instant case, Appellant passed his polygraph exam relating to the alleged sexual history of the victims list of bad acts of Appellant. Appellant twice, answered a seriers of Ten(10) questions: In sum:

Q: Have you ever put your finger in [K's] vagina?  A: NO

Q: Have you ever with sexual intent fondled [K] in any manner?  A: NO

Q: Have you ever with sexual intent put your hands on [K] genital?  A: NO

Q: Have you ever put your hands on [R's] genital?  A: NO

Q: Have you ever put ointment on [R's] legs?  A: NO

Then the polygraph examiner gave his results to Inv. Crow, that Appellant answered these direct questions with NO ATTEMPTED DECEPTION, and has been truthful in his answers. Again, the trial court abused its discretion in not allowing Appellant to submit the direct polygraph questions and answers to the jury with the State's expert witness Inv. Crow's testimony. When Inv. Crow uses polygraph exams extensively and rely's heavily on their results in evaluating the validity of sexual assault claims, it's an extremely useful diagnostic tool for his interrogation, and a routine part of his investigation. In Wyrick v. Fields, 459 U.S. 42 (1982)(Statements made to polygraph operator - but not the results of exams - may be admissible). With considerations to the results depend on far to many physical and psychological variables and can be manipulated to an extent, depending on the question asked, sometimes capable of detecting deception and worthy as an interrogation tool.

In the 2011-2012 Edition of Professor David L. Faigman's Modern Scientific Evidence, included the 2003 report of the National Academy of Science on scientific evidence for the polygraph, noted by the National Research Counsel, one that is especially pertinent to sex offenders order to take and pass polygraph examinations, is that "there is evidence suggesting that truthful members of socially stigmatized groups and truthful examinees who are believed to be guilty or believed to have a high likelihood of being guilty may show emotional and physiological responses in polygraph situation that mimic responses that are expected of deceptive individuals."

In sum, Appellant showed NO ATTEMPTED DECEPTION, the scientific reliability as a general proposition is clear on the truthfulness of the Appellant, noting that nothing in scientific evidence for the polygraph showed Appellant to be untruthful, in fact, even the victims testimony supported the polygraph results, clearly showing the Appellant told the truth when he underwent the examination.

In the Texas Department of Family and Protective Services Investigation Report dated 2009, case No. 09-106430, #33997830.

Interview with K.B., She reported that: "She got out of the shower and had her towel on ... he tried to make her sit down by pushing her shoulders down and he then put his fingers inside her."

But yet, during K.B.'s trial testimony: (RR4:49)

Q: [State] Was there ever an incident where you came out of the shower wearing a towel that you recall? A: [K.B.] YES

A: [K.B.] ... he sat me down on the side of the bed,... And I got up really fast and left the room as quickly as I could.

Q: [State] Did he actually do anything to you at that time? A:[K.B.] NO

As further, Interview with R.B., ... denied that anyone had ever touched her inappropriately. She said she would tell.

And, during R.B.'s trial testimony: (RR3:38) She states Appellant touched many times. Almost daily, starting in the fourth grade until the end of the eighth grade.

Thereby, making Appellant's sexual history polygraph evidence, pertinent facts for the factfinder to consider in its decision making process. Appellant contends that the Court of Appeals erred in concluding that the State did not withhold material, exculpatory evidence at trial, in violation of Brady v. Maryland, 373 U.S. 83; 83 S.Ct. 1194; 10 L.Ed.2d 215 (1963), and violates Appellant's

- 7 -

United States Constitution Amendment Fourteenth guarantee of due process. Id. at 87, 83 S.Ct. at 1196-97.

In Wood v. Bartholomew, 516 U.S. 1,10; 116 S.Ct. 7 (1995), Judgment of the Court of Appeals was reversed and remanded because Polygraph Exam's existed ... . evidence is "material" under Brady, and the failure to disclose it justifies setting aside a conviction, only where there exist a "reasonable probability" that had the evidence been disclosed the results at trial would have been different, Kyles v. Whitley, 514 U.S. 419, 433-434; 115 S.Ct. 1555, 1565-1566; 131 L.Ed.2d 490 (1995); and U.S. v. Bagley, 473 U.S. 667,682; 105 S.Ct. 3375, 3383-84; 87 L.Ed.2d 481 (1985)(opinion of Blackmun, J.)Id. at 685; 105 S.Ct. at 3385(White, J., concurring in part and concurring in judgment).

In the case at bar, the Eighth District Court of Appeals noted that under Texas Law polygraph exams are inadmissible for all purposes. However, Court of Appeals did not consider that the polygraph evidence was material under Brady. And, the Court did not reason that "[h]ad defense counsel been able to cross-examine the State's witnesses on the Appellant's sexual history polygraph," particularily the "victims list of offenses;" that "would have uncovered conflicting statements which could have been used quite effectively at trial." In U.S. v. Sipe, 388 F.3d 471 (5th Cir. 2004), A Brady violation on government's suppression of evidence constituted a new trial. Eventhough, the government argues that Sipe knew of or could have discovered with reasonable diligence .... . The United States Court of Appeals FIFTH Cir. were not persuaded. Id. at 481.

A reviewing Court should not substitute its judgment for that of the trial court, but rather must decide whether the trial court's decision was arbitiary or unreasonable. Webb v. State, 129 S.W.3d 126,129 (Tex.Crim.App. 2004). The results of a polygraph exam are inadmissible, Leonard v. State, 385 S.W.3d 570, 572 (Tex.Crim.App. 2012). However, results of Appelant's polygraph test were relevant to the trial on the issue of relative culpability and refute the States assertion that no evidence other than State witness'es testimony support the claim that Appellant committed the offenses. Appellant may use evidence that shows he did not participate in the offenses as the prosecution would like the jury to believe. Mak v. Blodgett, 507 U.S. 951; 113 S.Ct. 1363; 122 L.Ed.2d 742(1993). Therefore, the issue of relative culpability was before the jury. Since relative culpability is an appropriate mitigating factor, the Appellant's polygraph is

- 8 -

relevant insofar as it bears on the question, if Appellant participated in the alleged crimes. Id. There were clear issues of relative credibility and culpability btween Appellant and witness'es, and lack of polygraph evidence en-; abled State Prosecutors to impugn, persuasively, Appellant's credibility before the jury, U.S.C.A. Const. Amend. 14. Furthermore, the mere mention of a polygraph examination to be reversible error, an "impression must have been implanted in the minds of the jurors that the result of the lie dector test had been unfavorable to [the] Appellant." Nichols v. State, 378 S.W.2d 335,337 (Tex. Crim.App 1964).

In the instant case, as elucidated above, Appellant's polygraph was favorable evidence and pertinent to his trial. And, additionally, to the standards of Brecht v. Abrahamson, 507 U.S. 619; 113 S.Ct.1710; 123 L.Ed.2d 353 (1993), the Appellant met his burden of showing that the exclusion of the polygraph evidence had a "substantial and injurious effect on the verdict because there is a reasonable probability that, had the evidence been admitted, it would have substantially influenced at least one juror's balancing of aggravated and mitigating factor." And, this Court (Tex.Crim.App.) made a controlling resolution of favorable material evidence in Thomas v State, 841 S.W.2d 399 (Tex.Crim.App. 1992). This Court relies upon its three part test to determine whether the State violated Appellant's Right to due process under the Fourteenth Amendment. Id. And, Favorable evidence is any evidence, including exculpatory and impeachment evidence that, if disclosed and used effectivele, may make the difference between conviction and acquittal. Id. at 403,404.

## QUESTION NO. TWO

Did the EIGHTH District Court of Appeals error in its opinion that the trial court did not abuse its discretion under Rules of Evidence, by excluding Investigator Toby Crow's expert opinion testimony, when the Polygraphic Examination and their Results could be the basis of the experts opinion. (RR4:174-175)

## Factual Background

In the brief filed in the Court of Appeals, the State summerized its arguments as follows. NO error is shown in the denial of the State's witness Inv. Toby Crow's expert opinion testomony, that improperly left a false impression on the factfinder, to his investigation, and, to the abandonment of his investigation.

State's brief in the Court of Appeals, SUMMARY OF THE ARGUMENT, Pg 7-8

The argument presented in support of this summary is:

- 9 -

The error claimed that the State's witness Inv. Crow's expert opinion testimony left misleading evidence with the factfinder, stating that: "There was NO other evidence."(RR4:183). When otherwise inadmissible Polygraph Evidence, and Inv. Crow's expert opinion in explaining the matter are reliable and relevant to the closing of his investigation.
(RR4: 177-179)

State's brief in the Court of Appeals, ARGUMENT, Pg 8 and 10

## Argument and Authorities

There's no factual dispute about what Appellant said at this point, from the beginning of Inv. Crow's investigation, during Appellant's interviews, and subsequently, Appellant's Sexual History Polygraphic Examination. Twice, Appellant answered a seriers of Ten(10) questions. Immediately following, the Polygraph Examiner informed Inv. Crow, test results, the questions, and, specifically, a report stating: "Analsis of Mr. Stanton's polygraph revealed NO Attempted Deception to the relevant questions, it is my opinion he has been truthful in his answers during the polygraph examination." And then, immediately after, Investigator Crow abandoned his investigation, and Appellant was able to return back to his family and home. Although the report of the Polygraph Examiner, the polygraph test, and the results are part of the record of Inv. Crow's investigation, they appear NoWhere in the trial record. They were similiarly mentioned in the pre-trial hearing (RR2:8), Inv. Crow's trial testimony (RR4:171-73), and as Inv. Crow's expert opinion "Voir Dire" hearing (RR4:183-84). However, they were not offered into evidence at trial, and this omission was raised as an issue on Direct Appeal (App.Bf:4-7), and now in Appellant's Petition for Discretionary Review.

The Court of Appeals erred in holding that Tennard's ban on polygraph evidence applies to expert opinion under Rules of Evidence, Rule 703 and 705.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., The Supreme Court focused upon the admissibility of Scientific Expert Testimony. It pointed out that such testimony is admissible only if it is both relevant and reliable. And it held that Federal Rule of Evidence "assign to the trial Judge the task of ensuring that an expert's testimony both rest on reliable foundation and is relevant to the task at hand. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Here, in the case at bar, the Texas Court of Criminal Appeals is required to decide how Daubert applies to the testimony of the State's expert witness Inv. Toby Crow and other experts who are not scientists. The Supreme Court concluded that Daubert's general holding -- setting forth the trial Judge's gen-

- 10 -

eral "gatekeeping" obligation -- applies not only to testimony based on "Scientific" knowledge, but also to testimony based on "technical" and "other Specialized" knowledge, see Fed.R.Evid 702; Tex.R.Evid 702. The Supreme Court also concluded that a trial court may consider one or more of the more specific factors that Daubert mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in Daubert, the test of reliability is "flexible," and Daubert's list of specific factors neither necessarily nor exclusively applies to all expert's or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as list enjoys in respect to its ultimate reliability determination. See General Electric Co. v. Joiner, 522 U.S. 136,143; 118 S.Ct. 512; 139 L.Ed.2d 508 (1997)(Court of Appeals are to apply "abuse of discretion" standard when reviewing district court's reliability determination). The Supreme Court held that abuse of discretion is the appropriate standard. [W]hile Rules of Evid allow district courts to admit a somewhat broader range of scientific testimony that would be admissible under Frye, they leave in place the "gatekeeper" role of the trial Judge in screening such evidence. In the case at bar, the trial Judge heard the evidence, State's witness'es, and then the screening of Inv. Crow's expert opinion testimony to his thirty one(31) years of investigating experieces and twenty seven(27) years as the "Primary 'GURU' Juvenile Investigator" in crimes, to make a ruling stating that: "I'm going to keep out the polygraph information."(RR4:185)(St.Bf:11).

In Hartman v. State, 946 S.W.2d 60 (Tex.Crim.app. 1997), the Court of Criminial Appeals, Meyers, J., held that Kelly test for determination admissibility of scientific evidence, requiring that scientific evidence be sufficiently reliable and relevant to help the jury in reaching accurate results, is not limited to novel scientific evidence, but, rather, applies to all scientific evidence. Keller, J., filed a concurring and dissenting opinion in which McCormick, P., J., joined. In Kelly, this Court held Rule 702 superseded the Frye "general acceptance" standard for the admissibility of scientific expert testimony. Kelly, 824 S.W.2d at 572. And in Daubert, the Supreme Court held, in light of the adoption of Federal Rule 702, the Frye test was no longer the standard for admissibility of scientific expert testimony. Daubert, 509 U.S. at 585-87, 113 S.Ct. at 2793. Kelly and Daubert set forth a two pronged reliability and relevance standard. Id. at 591-93. 113 S.Ct at 2796. The Supreme Court explained "[t]his entails a preliminary assessment of whether the reasoning or methodology underlying

the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. The Texas Supreme Court followed suit in E.I. duPont de Nemours & Co. v. Robinson, 923 S.W.2d 549 (Tex. 1995) adopting the test enunciated in Kelly and Daubert.

Here, in the case at bar, it is not for an Appellate Court to substitute its judgment for that of a trial court in determining abuse of discretion, but rather, the appellate court must determine whether the trial court has made a decision that is outside the zone of reasonable disagreement. A trial Judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement. Davis v. State, 329 S.W.3d 798, 813-14 (Tex.Crim.App. 2010); Russean v. State, 291 S.W.3d 426, 438 (Tex.Crim.App. 2009). As elucidated above, in the instant case, the evidence at issue is the testimony of expert Inv. Crow. Admission of expert opinion testimony is governed by Rule 702 of the Texas Rules of Evidence. Inv. Crow's specialized knowledge will assist the trier of fact to understand the polygraph evidence and to determine any fact in issue, he's qualified as an expert by knowledge, skill, experience, training, and education that testifing thereto in the form of an opinion or otherwise. Tex.R.Evid 702; See Morales v. State, 32 S.W.3d 862, 865 (Tex.Crim.App. 2000), For expert testimony to be admissible under this Rule, the party offering the scientific expert testimony must demonstrate, by clear and convincing evidence, that such testimony "is sufficiently reliable and relevant to help the jury in reaching accurate results," Kelly v. State, 824 S.W.2d 568, 572 (Tex.Crim.App. 1992). Here, Inv. Crow's expert opinion is reliable and relevant, and "would have assisted the trier of fact and is sufficiently tied to the facts of the case. Hence, to be relevant, the expert "must make an effort to tie pertinent facts of the case to the scientific principles which are the subject of his testimony. By this Court examining Inv. Crow's expert testimony, this Court of Criminal Appeals shall hold that Inv. Crow's prooffered testimony was relevant because it satisfies those requirements.

Under Rules of Evid 703, which permits an expert to base his opinion testimony on the data and facts made known to him during his investigation and trial. Tex.R.Evid 703; See also Ramey v. State, No. AP-75678, 2009 Tex.Crim.App. LEXIS 124, at *44-45 (Tex.Crim.App. 2009)(stating that the rules of evidence do not requir an expert to complete personal interviews in order to give an opinion

about future dangerousness). Thus, it was sufficient that Inv. Crow base his opinion on facts learned during his investigation. After all, Inv. Crow responded to a seriers of hypotheticals which mirrored the procedure used, and, thus, exposed the expert to the pertinent facts of his specific investigation.

In Leonard, the Court's allowed the polygraph evidence to be admissible under Rules of Evidence 702, 703, and 705. Rule 702 allows an expert witness to testify as to his opinion. Under Rule 705(b), a party can question the expert about the underlying facts or data upon which the opinion is bases, and Rule 703 specifies that if the facts or data used to form the opinion are reasonable relied upon by experts in the field, the facts or data need not be admissible in evidence. Leonard, 2012 Tex.Crim.App. LEXIS 477 at *5. Inv. Crow was qualified as an expert in the field of sex offenders to base his opinion. In Leonard, the defendant filed a motion to exclude the polygraph, the court denied the motion stating, "while I understand the polygraph itself, the results may not be admissible to prove that a person is or is not telling the truth, ... the fact that someone is taking their polygraphs and their results could be the basis of an expert's opinion." The Court also concluded that even if the evidence was generally inadmissible, it was admissible as the basis of an expert's opinion. LEXIS 477 at *6.

In Tillman v. State, 2011 Tex.Crim.App. LEXIS 1343, His conviction was upheld on Direct Appeal. On review, the Court found that the trial court erred under Tex.R.Evid. 702 in holding that a defense expert witness was not permitted to testify before the jury. The expert used his extensive experience and knowledge to opine about the procedures in the case. He tied the relevant facts of the case to the scientific principles about which he testified. The jury should have had the benefit of the expert's testimony. The trial court abused its discretion when it excluded reliable, relevant evidence that would have assisted the trier of fact by increasing the juror's awareness of biasing factors.

The Supreme Court has repeatedly recognized that the right to present a complete defense in a criminal proceeding is one of the foundational principles of our adversarial truth-finding process; "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense'," Homes v. South Carolina, 547 U.S. 319, 324; 126 S.Ct. 1727; 164 L.Ed.2d 503 (2006). The excluded polygraph evidence was not just relevant in the instant case, it was in

all likelyhood the most relevant evidence regarding the sole contested issue at the trial -- an issue about which there was not much evidence in the first place. K.B. made false allegations in 2009, Inv. Crow completed a through investigation into both R.B. and K.B.'s alleged allegations, used the polygraph examiner's opinion to base his opinion to dismiss the case and not file charges. Since these offences of crime implicates truthfulness or untruthfulness, the trial court would have acted within its discretion by allowing Appellant to cross-examine State's expert witness Inv. Crow on the polygraph examination.

For the above reasons, this Court of Criminal Appeals should hold that the EIGHTH District Court of Appeals OPINION constitutes an "unreasonable application of clearly established Federal Law," ... that deprived Appellant of his Constitutional right to "a meaningful opportunity to present a complete defense" as articulated by the Supreme Court in <u>Crane.</u>

## PRAYER FOR RELIEF

For the reasons stated herein, Petitioner, Luke Adam Stanton, SR., prays that this Honorable Court of Criminal Appeals GRANT this Petition for Discretionary Review, and, upon reviewing the Judgment entered, reverse these case's and remand the case's back to the Eighth District Court of Appeals for a New Trial.

Respectfully Submitted,

___January 19, 2015___
Date

Luke Stanton  #1830011
TDCJ - Michael Unit
2664 FM 2054
TN. Colony, Texas  75886

## CERTIFICATE OF SERVICE

I hereby certify a true and correct copy of the above foregoing Petition for Discretionary Review has been sent by United States Mail, postage prepaid, to Charles E. Orbison, Assistant Criminal District Attorney, 1450 East McKinney Street, 3rd floor, Denton, Texas 76209.

On this the __19th__ day of January 2015.

Luke Stanton  #1830011

- 14 -

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LUKE STANTON, | § | No. 08-12-00293-CR |
| Appellant | § | Appeal from the |
| v. | § | 211th District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC# F-2011-1911-C) |
| | § | |

## **J U D G M E N T**

The Court has considered this cause on the record and concludes there was no error in the

judgment. We therefore affirm the judgment of the court below. This decision shall be certified

below for observance.

IT IS SO ORDERED THIS 10TH DAY OF OCTOBER, 2014.

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating



## COURT OF APPEALS
## EIGHTH DISTRICT OF TEXAS
## EL PASO, TEXAS

| | | |
|---|---|---|
| LUKE STANTON, | § | No. 08-12-00294-CR |
| Appellant | § | Appeal from the |
| v. | § | 211th District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC# F-2011-1912-C) |
| | § | |

## J U D G M E N T

The Court has considered this cause on the record and concludes there was no error in the judgment. We therefore affirm the judgment of the court below. This decision shall be certified below for observance.

IT IS SO ORDERED THIS 10TH DAY OF OCTOBER, 2014.

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| LUKE STANTON, | § | No. 08-12-00295-CR |
|---|---|---|
| Appellant | § | Appeal from the |
| v. | § | 211th District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC# F-2011-1913-C) |
| | § | |

## J U D G M E N T

The Court has considered this cause on the record and concludes there was no error in the judgment. We therefore affirm the judgment of the court below. This decision shall be certified below for observance.

IT IS SO ORDERED THIS 10TH DAY OF OCTOBER, 2014.

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating



| | | |
|---|---|---|
| LUKE STANTON, | § | |
| | | No. 08-12-00293-CR |
| Appellant | § | |
| | | Appeal from the |
| v. | § | |
| | | 211th District Court |
| THE STATE OF TEXAS, | § | |
| | | of Denton County, Texas |
| Appellee. | § | |
| | | (TC# F-2011-1911-C) |
| | § | |

## O P I N I O N

Luke Stanton is appealing his convictions of sexual assault (Count I) and indecency with a child (Counts II - IV), enhanced by a prior felony conviction. A jury found Appellant guilty, found the enhancement paragraph true, and assessed his punishment at imprisonment for fifteen years on Counts I, II, III, and IV. The trial court included in the judgment an order that the sentences shall run consecutively. We affirm.

### FACTUAL SUMMARY

A jury found Appellant guilty of multiple sex-based offenses committed against K.B., R.B., and A.A. in three cases tried together: cause numbers F-2011-1911-C (Counts I - IV committed against K.B.)(cause number 08-12-00293-CR), F-2011-1912-C (Counts I - IV committed against R.B.)(cause number 08-12-00294-CR), and cause number F-2011-1913-C involving a single offense committed against A.A. (cause number 08-12-00295-CR). This

appeal concerns only the sexual assault and indecency with a child convictions related to K.B. Appellant has not challenged the sufficiency of the evidence supporting his convictions and the issues presented on appeal are related to the exclusion of evidence that he passed a polygraph. We will summarize the evidence related to all three cases in order to place the issues raised on appeal in context.

R.B. and K.B. were Appellant's stepdaughters at the time these offenses were committed. R.B., who was sixteen years of age when this case was tried in August 2012, testified that Appellant touched her vagina "almost daily" both before and after she turned fourteen years of age. The first incident occurred when she was 10 or 11 years of age. Appellant rubbed ointment on mosquito bites on her legs and he gradually moved his hand until he was touching her vagina over her clothes. R.B. reported the incident to her mother, K.S., and K.S. replied that she would talk to Appellant. When K.S. asked Appellant about R.B.'s statement, Appellant denied any wrongdoing. Appellant continued to assault R.B. by touching her genitals both on top of and under her clothing on many other occasions. She explained that he often began by rubbing her feet and legs, but he eventually moved his hand so that he was touching her vagina. R.B. also testified that Appellant touched and squeezed her breast with his hand. R.B. told her mother what Appellant was doing to her, but K.S. did not believe her.

K.B. was twenty years old at the time of trial. K.B. testified that when she was in the fourth grade, Appellant came into her bedroom at night, reached under the covers, and squeezed her vagina with his hand. K.B. kicked him and pulled away from him. Appellant then left the room. On another occasion when K.B. was about to enter the fifth grade, she and R.B. were having a water gun fight in the pool. Appellant was also in the pool and he got behind K.B. and pulled her onto his lap. Appellant moved K.B.'s hands under the water and made her touch his

penis. He also moved her swimsuit bottom and tried to penetrate her with his penis. She tried to pull away because it hurt but he would not let go of her. K.B. did not cry out because she did not want to scare R.B. who was only five or six years of age at the time. Appellant finally let her go and she got out of the pool. In another incident, Appellant pulled down K.B.'s pants and underwear and touched her genitals with his mouth and tongue. K.B. tried to kick him and get away but he held her down. K.B. testified that Appellant continued to touch her genitals with his hands and mouth on many other occasions when her mother was at work. These incidents occurred at least twice a week for six years or, in the words of K.B., "[t]oo many times to count." K.B. recalled that whenever she rejected Appellant's advances completely, he would be mean to her and R.B. When K.B. was in elementary school, she tried to tell her mother that Appellant had touched her genitals, but K.S. responded by questioning whether K.B. was confused or mistaken about what had happened. K.B. insisted she was not mistaken and her mother talked to Appellant about it. He denied it.

In 2008, R.B. told her school counselor what Appellant had done. K.S. took both R.B. and K.B. to the Children's Advocacy Center in Lewisville. Prior to the interview, K.S. asked R.B. if she could be mistaken or if it could have been an accident. K.B. described her mother as being "panicky" prior to the interviews and she told K.B. that they could be taken away from her and they might never see one another again. R.B. and K.B. did not tell the truth during their interviews because they were scared. Appellant continued to touch both of them inappropriately. In 2009, they were interviewed again but this time reported what Appellant had been doing to them. Nothing happened and Appellant returned home. He also continued to molest them.

In May of 2011, thirteen-year-old A.A. visited at R.B.'s home. Appellant got onto the bed where R.B. and A.A. were watching television and began rubbing A.A.'s feet. A.A. thought

it was weird but she trusted him. Appellant moved from A.A.'s feet to her legs and he gradually moved his hand higher until he was touching her butt and vagina. He suddenly stopped when R.B.'s mother got home from work and walked into the room. A.A. told R.B. what had happened when they went to A.A.'s house. A.A. reported the assault to a school counselor a week later. On June 1, 2011, R.B. used her cellphone to secretly record Appellant touching her inappropriately. After K.B. saw the video, she took R.B. to the Sheriff's Office rather than telling their mother because she was afraid that her mother or Appellant would delete the videos. Law enforcement conducted an investigation and a grand jury returned three indictments against Appellant.

## EXCLUSION OF POLYGRAPH EVIDENCE

In Issues One and Two, Appellant contends that the trial court abused its discretion by excluding evidence that he had taken and passed a polygraph examination in 2009. Toby Crow is an investigator with the Denton County Sheriff's Office. Investigator Crow was assigned to investigate R.B.'s and K.B.'s allegations against Appellant. Investigator Crow observed the interviews of K.B. and R.B. at the Child Advocacy Center through a one-way glass, but he did not actively participate in those interviews. He interviewed Appellant on November 13, 2009. During a two-minute portion of the interview, Crow asked Appellant whether he would take a polygraph and Appellant agreed. At trial, the State sought to introduce the interview, but the prosecutor requested a hearing outside of the jury's presence to address the State's contention that the polygraph portion of the interview should be redacted. Appellant's attorney argued that the video should not be redacted to remove the discussion about a polygraph examination and he specifically stated that he did not want to introduce the results of the polygraph. The State responded that polygraph evidence is inadmissible. The trial court ruled that the video would be

- 4 -

admitted without the polygraph portion. The jury returned to the courtroom and the State offered the redacted version of the video, State's Exhibit 22. Appellant affirmatively stated he had no objection and the trial court admitted it. The video was then played for the jury.

Investigator Crow also interviewed K.S. and he observed that she appeared to be torn between what her daughters were saying and what Appellant was saying. After speaking with Appellant, K.S., R.B., and K.B., he decided not to file a case against Appellant or send the case to the District Attorney's Office. The following exchange occurred during redirect examination:

> [State]: And you would agree with me that at least nowhere in your report does it make any mention of the fact that the girls had been at the [Child Advocacy Center] the year before to talk about allegations that had come out to CPS in 2008?
>
> [Crow]: No.
>
> [State]: Okay. And you can't say for certain whether or not you knew about that when you did this investigation?
>
> [Crow]: That's correct.
>
> [State]: Okay. And in 2009 you didn't have the benefit of -- of video of him touching [R.B.]; is that correct?
>
> [Crow]: The only thing I had the benefit of in 2009 was testimony of [K.B.] and [R.B.], testimony of [K.S.] and the testimony of [Appellant]. There was no other evidence.

In a hearing outside of the jury's presence, Appellant argued that Crow's testimony that there was no other evidence than the statements of the people involved had left a false impression with the jury that he did not conduct any additional investigation. Appellant asserted that he should be permitted to question Crow about the polygraph examination and the redacted portion of the video should be admitted into evidence. The trial court denied Appellant's requests.

*Standard of Review*

A trial court has broad discretion in determining the admissibility of evidence. *Allridge*

*v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App. 1991). Consequently, an appellate court reviews a trial court's decision admitting or excluding evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010). The trial court's ruling will be overturned only if it is so clearly wrong that the ruling lies outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh'g). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003). We will not overturn the trial court's decision so long as it is correct under any theory of law applicable to the case and the decision is within the zone of reasonable disagreement. *See Ramos v. State*, 245 S.W.3d 410, 418 (Tex.Crim.App. 2008).

It has long been the rule in Texas that the existence and results of polygraph examinations are inadmissible for all purposes. *Tennard v. State*, 802 S.W.2d 678, 683 (Tex.Crim.App. 1990); *Robinson v. State*, 550 S.W.2d 54, 59 (Tex.Crim.App. 1977); *Nichols v. State*, 378 S.W.2d 335, 337 (Tex.Crim.App. 1964); *Hoppes v. State*, 725 S.W.2d 532, 536 (Tex.App.--Houston [1st Dist.] 1987, no pet.). There are two primary reasons for excluding polygraph evidence: (1) the inherent unreliability of a polygraph test and (2) the tendency for the results to be unduly persuasive. *Martines v. State*, 371 S.W.3d 232, 250 (Tex.App.--Houston [1st Dist.] 2011, no pet.); *Marcum v. State*, 983 S.W.2d 762, 765 (Tex.App.--Houston [14th Dist.] 1998, pet. ref'd); *Russell v. State*, 798 S.W.2d 632, 635 (Tex.App.--Fort Worth 1990, no pet.); *see Romero v. State*, 493 S.W.2d 206, 210-11 (Tex.Crim.App. 1973), *overruled on other grounds by Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App. 1992)(noting that polygraph evidence has generally been excluded due to potential sources of error in the test itself, including the competency of the examiner, the tendency of the jury to place too much reliance on the test

results, the lack of standardization of test procedures, and the difficulty for jury evaluation of examiners' opinions). In limited instances, the erroneous admission of polygraph evidence may "open the door" to further inadmissible evidence regarding the polygraph results. *See Long v. State*, 10 S.W.3d 389, 398-99 (Tex.App.--Texarkana 2000, pet. ref'd), *citing Lucas v. State*, 479 S.W.2d 314, 315 (Tex.Crim.App. 1972) and *Patteson v. State*, 633 S.W.2d 549, 552 (Tex.App.-- Houston [14th Dist.] 1982, no pet.).

Appellant asserts that the polygraph evidence and results became admissible to correct the misleading impression left by Investigator Crow's testimony that he did not present the case to the District Attorney's Office because he only had the interviews with K.B., R.B., K.S., and Appellant, and "[t]here was no other evidence." Appellant cites *Lucas v. State* in support of his argument that this testimony "opened the door" to admission of the polygraph evidence. In *Lucas*, the defendant testified that he had an agreement with the district attorney to take a polygraph, and if he passed, the district attorney would dismiss the case. *Lucas*, 479 S.W.2d at 315. The defendant also introduced evidence that the polygraph results showed he was not the person who had assaulted the complainant. *Id.* The trial court permitted the district attorney to testify that the defendant did not pass the polygraph test. *Id.* The Court of Criminal Appeals held that the defendant, by introducing the polygraph evidence, opened the door for the State to introduce the district attorney's testimony. *Id.*

The instant case is readily distinguishable from *Lucas* because the State did not introduce any evidence regarding the polygraph examination. The question in *Lucas* was whether the inadmissible evidence introduced by the defendant about the polygraph examination opened the door for the State to introduce equally inadmissible evidence about the polygraph results. That is not the question here. Instead, we are asked to determine whether the State, by introducing

admissible evidence which did not directly or even indirectly refer to a polygraph test, opened the door to inadmissible polygraph evidence. The Court of Criminal Appeals rejected such a claim in *Robinson v. State*, 550 S.W.2d 54 (Tex.Crim.App. 1977).

In *Robinson*, a capital murder case, the defendant met two other men, Smith and Holden, at a bar and agreed to drive them to an undisclosed place to gamble. *Robinson*, 550 S.W.2d at 55. Holden loaned Robinson a .22 caliber pistol and drove them to a location under Smith's directions. *Id.* Holden waited in the car while Robinson and Smith, both armed with pistols, left for approximately fifteen minutes. *Id.* When they returned, they were running and carrying a cigar box which contained currency and a .38 caliber pistol and holster. *Id.* Holden testified against Robinson at trial. *Id.* He said that Robinson, who was still carrying the .22 caliber pistol, told him that he had to shoot someone in the head at a grocery store. *Id.* at 55-56. They subsequently drove to another man's house and divided the proceeds of the robbery. *Id.* at 56. Robinson again stated that he had shot the man in the head. *Id.* The pistol Holden loaned to Robinson was identified as the murder weapon. *Id.* In a hearing outside of the jury's presence, it was established that Holden had entered into a plea bargain whereby he would testify for the State in exchange for probated sentences in the robbery and murder cases. *Id.* The State also required Holden to take a polygraph test and pass the test. *Id.* The trial court excluded the polygraph evidence. *Id.*

Holden's attorney testified at trial about the plea bargain. Defense counsel asked him whether Holden had been promised that he would receive no punishment in excess of probation on the two pending indictments against him and the attorney replied affirmatively. *Id.* at 57. The State then elicited testimony by the attorney that the plea bargain was contingent upon Holden taking a polygraph test and passing it. *Id.* at 57-58. On appeal, the State cited *Lucas* and

argued that the defense question about the plea bargain opened the door for the State to introduce the evidence regarding the polygraph exam and results. *Id.* at 60. The Court of Criminal Appeals found *Lucas* distinguishable because defense counsel did not question the witness about polygraph evidence. *Id.* Further, the Court declined to hold that the polygraph evidence became admissible to correct a false impression because that would be in effect using a test which has been deemed unreliable to dispel a false impression. *Id.* Finally, the Court rejected the State's theory that a false impression had been created by defense counsel's question to Holden's attorney as to whether Holden had been promised "he will receive no punishment in excess of probation" for testifying. *Id.*

Like the Court of Criminal Appeals in *Robinson*, we decline to hold that the inherently unreliable polygraph evidence became admissible to dispel an alleged misleading impression. *See Robinson*, 550 S.W.2d at 60. Investigator Crow's testimony did not create a misleading impression in the mind of the jury. Crow testified that he did not present the case to the District Attorney's Office in 2009 because the only "evidence" he had was the statements from Appellant, the two complainants, and their mother, who was torn between what her daughters were saying and what Appellant was saying. All of the evidence Crow referenced in his testimony was admissible. Crow had over twenty-seven years' experience in criminal investigations and he presumably knew that polygraph evidence is inadmissible. As the sponsoring witness of State's Exhibit 22, Investigator Crow was present during the hearing conducted outside of the jury's presence and he was in the courtroom when the interview was played for the jury so he was aware that the portion of the interview where he discussed a polygraph examination with Appellant had been muted. Considered in context, Crow's reference to "evidence" meant admissible evidence. Thus, his testimony was not false or misleading. We

conclude that the trial court did not abuse its discretion by excluding evidence about the polygraph examination and the results. *See Robinson*, 550 S.W.2d at 60. We overrule Issues One and Two and affirm the judgment of the trial court.

ANN CRAWFORD McCLURE, Chief Justice

October 10, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating

(Do Not Publish)



| | | |
|---|---|---|
| LUKE STANTON, | § | No. 08-12-00294-CR |
| Appellant | § | Appeal from the |
| v. | § | 211th District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC# F-2011-1912-C) |
| | § | |

## OPINION

Luke Stanton is appealing his convictions of continuous sexual abuse of a young child (Count I) and indecency with a child (Counts II - IV), enhanced by a prior felony conviction. A jury found Appellant guilty, found the enhancement paragraph true, and assessed his punishment at imprisonment for forty years on Count I and fifteen years on Counts II, III, and IV. The trial court included in the judgment an order that the sentences shall run consecutively. We affirm.

### FACTUAL SUMMARY

A jury found Appellant guilty of multiple sex-based offenses committed against K.B., R.B., and A.A. in three cases tried together: cause numbers F-2011-1911-C (Counts I - IV committed against K.B.)(cause number 08-12-00293-CR), F-2011-1912-C (Counts I - IV committed against R.B.)(cause number 08-12-00294-CR), and cause number F-2011-1913-C

involving a single offense committed against A.A. (cause number 08-12-00295-CR). This appeal concerns only the continuous sexual abuse of a child and indecency with a child convictions related to R.B. Appellant has not challenged the sufficiency of the evidence supporting his convictions and the issues presented on appeal are related to the exclusion of evidence that he passed a polygraph. We will summarize the evidence related to all three cases in order to place the issues raised on appeal in context.

R.B. and K.B. were Appellant's stepdaughters at the time these offenses were committed. R.B., who was sixteen years of age when this case was tried in August 2012, testified that Appellant touched her vagina "almost daily" both before and after she turned fourteen years of age. The first incident occurred when she was 10 or 11 years of age. Appellant rubbed ointment on mosquito bites on her legs and he gradually moved his hand until he was touching her vagina over her clothes. R.B. reported the incident to her mother, K.S., and K.S. replied that she would talk to Appellant. When K.S. asked Appellant about R.B.'s statement, Appellant denied any wrongdoing. Appellant continued to assault R.B. by touching her genitals both on top of and under her clothing on many other occasions. She explained that he often began by rubbing her feet and legs, but he eventually moved his hand so that he was touching her vagina. R.B. also testified that Appellant touched and squeezed her breast with his hand. R.B. told her mother what Appellant was doing to her, but K.S. did not believe her.

K.B. was twenty years old at the time of trial. K.B. testified that when she was in the fourth grade, Appellant came into her bedroom at night, reached under the covers, and squeezed her vagina with his hand. K.B. kicked him and pulled away from him. Appellant then left the room. On another occasion when K.B. was about to enter the fifth grade, she and R.B. were having a water gun fight in the pool. Appellant was also in the pool and he got behind K.B. and

pulled her onto his lap. Appellant moved K.B.'s hands under the water and made her touch his penis. He also moved her swimsuit bottom and tried to penetrate her with his penis. She tried to pull away because it hurt but he would not let go of her. K.B. did not cry out because she did not want to scare R.B. who was only five or six years of age at the time. Appellant finally let her go and she got out of the pool. In another incident, Appellant pulled down K.B.'s pants and underwear and touched her genitals with his mouth and tongue. K.B. tried to kick him and get away but he held her down. K.B. testified that Appellant continued to touch her genitals with his hands and mouth on many other occasions when her mother was at work. These incidents occurred at least twice a week for six years or, in the words of K.B., "[t]oo many times to count." K.B. recalled that whenever she rejected Appellant's advances completely, he would be mean to her and R.B. When K.B. was in elementary school, she tried to tell her mother that Appellant had touched her genitals, but K.S. responded by questioning whether K.B. was confused or mistaken about what had happened. K.B. insisted she was not mistaken and her mother talked to Appellant about it. He denied it.

In 2008, R.B. told her school counselor what Appellant had done to her. K.S. took both R.B. and K.B. to the Children's Advocacy Center in Lewisville. Prior to the interview, K.S. asked R.B. if she could be mistaken or if it could have been an accident. K.B. described her mother as being "panicky" prior to the interviews and she told K.B. that they could be taken away from her and they might never see one another again. R.B. and K.B. did not tell the truth during their interviews because they were scared. Appellant continued to touch both of them inappropriately. In 2009, they were interviewed again but this time reported what Appellant had been doing to them. Nothing happened and Appellant returned home. He also continued to molest them.

In May of 2011, thirteen-year-old A.A. visited at R.B.'s home. Appellant got onto the bed where R.B. and A.A. were watching television and began rubbing A.A.'s feet. A.A. thought it was weird but she trusted him. Appellant moved from A.A.'s feet to her legs and he gradually moved his hand higher until he was touching her butt and vagina. He suddenly stopped when R.B.'s mother got home from work and walked into the room. A.A. told R.B. what had happened when they went to A.A.'s house. A.A. reported the assault to a school counselor a week later.

On June 1, 2011, R.B. used her cellphone to secretly record Appellant touching her inappropriately. After K.B. saw the video, she took R.B. to the Sheriff's Office rather than telling their mother because she was afraid that her mother or Appellant would delete the videos. Law enforcement conducted an investigation and a grand jury returned three indictments against Appellant.

## EXCLUSION OF POLYGRAPH EVIDENCE

In Issues One and Two, Appellant contends that the trial court abused its discretion by excluding evidence that he had taken and passed a polygraph examination in 2009. Toby Crow is an investigator with the Denton County Sheriff's Office. Investigator Crow was assigned to investigate R.B.'s and K.B.'s allegations against Appellant. Investigator Crow observed the interviews of K.B. and R.B. at the Child Advocacy Center through a one-way glass, but he did not actively participate in those interviews. He interviewed Appellant on November 13, 2009. During a two-minute portion of the interview, Crow asked Appellant whether he would take a polygraph and Appellant agreed. At trial, the State sought to introduce the interview, but the prosecutor requested a hearing outside of the jury's presence to address the State's contention that the polygraph portion of the interview should be redacted. Appellant's attorney argued that

the video should not be redacted to remove the discussion about a polygraph examination and he specifically stated that he did not want to introduce the results of the polygraph. The State responded that polygraph evidence is inadmissible. The trial court ruled that the video would be admitted without the polygraph portion. The jury returned to the courtroom and the State offered the redacted version of the video, State's Exhibit 22. Appellant affirmatively stated he had no objection and the trial court admitted it. The video was then played for the jury.

Investigator Crow also interviewed K.S. and he observed that she appeared to be torn between what her daughters were saying and what Appellant was saying. After speaking with Appellant, K.S., R.B., and K.B., he decided not to file a case against Appellant or send the case to the District Attorney's Office. The following exchange occurred during redirect examination:

> [State]: And you would agree with me that at least nowhere in your report does it make any mention of the fact that the girls had been at the [Child Advocacy Center] the year before to talk about allegations that had come out to CPS in 2008?
>
> [Crow]: No.
>
> [State]: Okay. And you can't say for certain whether or not you knew about that when you did this investigation?
>
> [Crow]: That's correct.
>
> [State]: Okay. And in 2009 you didn't have the benefit of -- of video of him touching [R.B.]; is that correct?
>
> [Crow]: The only thing I had the benefit of in 2009 was testimony of [K.B.] and [R.B.], testimony of [K.S.] and the testimony of [Appellant]. There was no other evidence.

In a hearing outside of the jury's presence, Appellant argued that Crow's testimony that there was no other evidence than the statements of the people involved had left a false impression with the jury that he did not conduct any additional investigation. Appellant asserted that he should be permitted to question Crow about the polygraph examination and the redacted portion of the

video should be admitted into evidence. The trial court denied Appellant's requests.

*Standard of Review*

A trial court has broad discretion in determining the admissibility of evidence. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App. 1991). Consequently, an appellate court reviews a trial court's decision admitting or excluding evidence for an abuse of discretion. *Martinez v.* Capital murder Case / death Penalty *State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010). The trial court's ruling will be overturned only if it is so clearly wrong that the ruling lies outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh'g). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003). We will not overturn the trial court's decision so long as it is correct under any theory of law applicable to the case and the decision is within the zone of reasonable disagreement. *See Ramos v. State*, 245 S.W.3d 410, 418 (Tex.Crim.App. 2008).

It has long been the rule in Texas that the existence and results of polygraph examinations are inadmissible for all purposes. *Tennard v. State*, 802 S.W.2d 678, 683 (Tex.Crim.App. 1990); *Robinson v. State*, 550 S.W.2d 54, 59 (Tex.Crim.App. 1977); *Nichols v. State*, 378 S.W.2d 335, 337 (Tex.Crim.App. 1964); *Hoppes v. State*, 725 S.W.2d 532, 536 (Tex.App.--Houston [1st Dist.] 1987, no pet.). There are two primary reasons for excluding polygraph evidence: (1) the inherent unreliability of a polygraph test and (2) the tendency for the results to be unduly persuasive. *Martines v. State*, 371 S.W.3d 232, 250 (Tex.App.--Houston [1st Dist.] 2011, no pet.); *Marcum v. State*, 983 S.W.2d 762, 765 (Tex.App.--Houston [14th Dist.] 1998, pet. ref'd); *Russell v. State*, 798 S.W.2d 632, 635 (Tex.App.--Fort Worth 1990, no pet.); *see Romero v. State*, 493 S.W.2d 206, 210-11 (Tex.Crim.App. 1973), *overruled on other*

*grounds by Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App. 1992)(noting that polygraph evidence has generally been excluded due to potential sources of error in the test itself, including the competency of the examiner, the tendency of the jury to place too much reliance on the test results, the lack of standardization of test procedures, and the difficulty for jury evaluation of examiners' opinions). In limited instances, the erroneous admission of polygraph evidence may "open the door" to further inadmissible evidence regarding the polygraph results. *See Long v. State*, 10 S.W.3d 389, 398-99 (Tex.App.--Texarkana 2000, pet. ref'd), *citing Lucas v. State*, 479 S.W.2d 314, 315 (Tex.Crim.App. 1972) and *Patteson v. State*, 633 S.W.2d 549, 552 (Tex.App.-- Houston [14th Dist.] 1982, no pet.).

Appellant asserts that the polygraph evidence and results became admissible to correct the misleading impression left by Investigator Crow's testimony that he did not present the case to the District Attorney's Office because he only had the interviews with K.B., R.B., K.S., and Appellant, and "[t]here was no other evidence." Appellant cites *Lucas v. State* in support of his argument that this testimony "opened the door" to admission of the polygraph evidence. In *Lucas*, the defendant testified that he had an agreement with the district attorney to take a polygraph, and if he passed, the district attorney would dismiss the case. *Lucas*, 479 S.W.2d at 315. The defendant also introduced evidence that the polygraph results showed he was not the person who had assaulted the complainant. *Id.* The trial court permitted the district attorney to testify that the defendant did not pass the polygraph test. *Id.* The Court of Criminal Appeals held that the defendant, by introducing the polygraph evidence, opened the door for the State to introduce the district attorney's testimony. *Id.*

The instant case is readily distinguishable from *Lucas* because the State did not introduce any evidence regarding the polygraph examination. The question in *Lucas* was whether the

-7-

inadmissible evidence introduced by the defendant about the polygraph examination opened the door for the State to introduce equally inadmissible evidence about the polygraph results. That is not the question here. Instead, we are asked to determine whether the State, by introducing admissible evidence which did not directly or even indirectly refer to a polygraph test, opened the door to inadmissible polygraph evidence. The Court of Criminal Appeals rejected such a claim in *Robinson v. State*, 550 S.W.2d 54 (Tex.Crim.App. 1977).

In *Robinson*, a capital murder case, the defendant met two other men, Smith and Holden, at a bar and agreed to drive them to an undisclosed place to gamble. *Robinson*, 550 S.W.2d at 55. Holden loaned Robinson a .22 caliber pistol and drove them to a location under Smith's directions. *Id.* Holden waited in the car while Robinson and Smith, both armed with pistols, left for approximately fifteen minutes. *Id.* When they returned, they were running and carrying a cigar box which contained currency and a .38 caliber pistol and holster. *Id.* Holden testified against Robinson at trial. *Id.* He said that Robinson, who was still carrying the .22 caliber pistol, told him that he had to shoot someone in the head at a grocery store. *Id.* at 55-56. They subsequently drove to another man's house and divided the proceeds of the robbery. *Id.* at 56. Robinson again stated that he had shot the man in the head. *Id.* The pistol Holden loaned to Robinson was identified as the murder weapon. *Id.* In a hearing outside of the jury's presence, it was established that Holden had entered into a plea bargain whereby he would testify for the State in exchange for probated sentences in the robbery and murder cases. *Id.* The State also required Holden to take a polygraph test and pass the test. *Id.* The trial court excluded the polygraph evidence. *Id.*

Holden's attorney testified at trial about the plea bargain. Defense counsel asked him whether Holden had been promised that he would receive no punishment in excess of probation

on the two pending indictments against him and the attorney replied affirmatively. *Id.* at 57. The State then elicited testimony by the attorney that the plea bargain was contingent upon Holden taking a polygraph test and passing it. *Id.* at 57-58. On appeal, the State cited *Lucas* and argued that the defense question about the plea bargain opened the door for the State to introduce the evidence regarding the polygraph exam and results. *Id.* at 60. The Court of Criminal Appeals found *Lucas* distinguishable because defense counsel did not question the witness about polygraph evidence. *Id.* The Court declined to hold that the polygraph evidence became admissible to correct a false impression because that would be in effect using a test which has been deemed unreliable to dispel a false impression. *Id.* Finally, the Court rejected the State's theory that a false impression had been created by defense counsel's question to Holden's attorney as to whether Holden had been promised "he will receive no punishment in excess of probation" for testifying. *Id.*

Like the Court of Criminal Appeals in *Robinson*, we decline to hold that the inherently unreliable polygraph evidence became admissible to dispel an alleged misleading impression. *See Robinson*, 550 S.W.2d at 60. Investigator Crow's testimony did not create a misleading impression in the mind of the jury. Crow testified that he did not present the case to the District Attorney's Office in 2009 because the only "evidence" he had was the statements from Appellant, the two complainants, and their mother, who was torn between what her daughters were saying and what Appellant was saying. All of the evidence Crow referenced in his testimony was admissible. Crow had over twenty-seven years' experience in criminal investigations and he presumably knew that polygraph evidence is inadmissible. As the sponsoring witness of State's Exhibit 22, Investigator Crow was present during the hearing conducted outside of the jury's presence and he was in the courtroom when the interview was

played for the jury so he was aware that the portion of the interview where he discussed a polygraph examination with Appellant had been muted. Considered in context, Crow's reference to "evidence" meant admissible evidence. Thus, his testimony was not false or misleading. We conclude that the trial court did not abuse its discretion by excluding evidence about the polygraph examination and the results. *See Robinson*, 550 S.W.2d at 60. We overrule Issues One and Two and affirm the judgment of the trial court.

ANN CRAWFORD McCLURE, Chief Justice

October 10, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating

(Do Not Publish)



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LUKE STANTON, | § | No. 08-12-00295-CR |
| Appellant | § | Appeal from the |
| v. | § | 211th District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC# F-2011-1913-C) |
| | § | |

## OPINION

Luke Stanton is appealing his conviction of indecency with a child, enhanced by a prior felony conviction. A jury found Appellant guilty, found the enhancement paragraph true, and assessed his punishment at imprisonment for ten years. The trial court included in the judgment an order that the sentences shall run consecutively. We affirm.

### FACTUAL SUMMARY

A jury found Appellant guilty of multiple sex-based offenses committed against K.B., R.B., and A.A. in three cases tried together: cause numbers F-2011-1911-C (Counts I - IV committed against K.B.)(cause number 08-12-00293-CR), F-2011-1912-C (Counts I - IV committed against R.B.)(cause number 08-12-00294-CR), and cause number F-2011-1913-C involving a single offense committed against A.A. (cause number 08-12-00295-CR). This

appeal concerns only the indecency with a child conviction related to A.A. Appellant has not challenged the sufficiency of the evidence supporting his conviction and the issues presented on appeal are related to the exclusion of evidence that he passed a polygraph. We will summarize the evidence related to all three cases in order to place the issues raised on appeal in context.

R.B. and K.B. were Appellant's stepdaughters at the time these offenses were committed. R.B., who was sixteen years of age when this case was tried in August 2012, testified that Appellant touched her vagina "almost daily" both before and after she turned fourteen years of age. The first incident occurred when she was 10 or 11 years of age. Appellant rubbed ointment on mosquito bites on her legs and he gradually moved his hand until he was touching her vagina over her clothes. R.B. reported the incident to her mother, K.S., and K.S. replied that she would talk to Appellant. When K.S. asked Appellant about R.B.'s statement, Appellant denied any wrongdoing. Appellant continued to assault R.B. by touching her genitals both on top of and under her clothing on many other occasions. She explained that he often began by rubbing her feet and legs, but he eventually moved his hand so that he was touching her vagina. R.B. also testified that Appellant touched and squeezed her breast with his hand. R.B. told her mother what Appellant was doing to her, but K.S. did not believe her.

K.B. was twenty years old at the time of trial. K.B. testified that when she was in the fourth grade, Appellant came into her bedroom at night, reached under the covers, and squeezed her vagina with his hand. K.B. kicked him and pulled away from him. Appellant then left the room. On another occasion when K.B. was about to enter the fifth grade, she and R.B. were having a water gun fight in the pool. Appellant was also in the pool and he got behind K.B. and pulled her onto his lap. Appellant moved K.B.'s hands under the water and made her touch his penis. He also moved her swimsuit bottom and tried to penetrate her with his penis. She tried to

pull away because it hurt but he would not let go of her. K.B. did not cry out because she did not want to scare R.B. who was only five or six years of age at the time. Appellant finally let her go and she got out of the pool. In another incident, Appellant pulled down K.B.'s pants and underwear and touched her genitals with his mouth and tongue. K.B. tried to kick him and get away but he held her down. K.B. testified that Appellant continued to touch her genitals with his hands and mouth on many other occasions when her mother was at work. These incidents occurred at least twice a week for six years or, in the words of K.B., "[t]oo many times to count." K.B. recalled that whenever she rejected Appellant's advances completely, he would be mean to her and R.B. When K.B. was in elementary school, she tried to tell her mother that Appellant had touched her genitals, but K.S. responded by questioning whether K.B. was confused or mistaken about what had happened. K.B. insisted she was not mistaken and her mother talked to Appellant about it. He denied it.

In 2008, R.B. told her school counselor what Appellant had done to her. K.S. took both R.B. and K.B. to the Children's Advocacy Center in Lewisville. Prior to the interview, K.S. asked R.B. if she could be mistaken or if it could have been an accident. K.B. described her mother as being "panicky" prior to the interviews and she told K.B. that they could be taken away from her and they might never see one another again. R.B. and K.B. did not tell the truth during their interviews because they were scared. Appellant continued to touch both of them inappropriately. In 2009, they were interviewed again but this time reported what Appellant had been doing to them. Nothing happened and Appellant returned home. He also continued to molest them.

In May of 2011, thirteen-year-old A.A. visited at R.B.'s home. Appellant got onto the bed where R.B. and A.A. were watching television and began rubbing A.A.'s feet. A.A. thought

it was weird but she trusted him. Appellant moved from A.A.'s feet to her legs and he gradually moved his hand higher until he was touching her butt and vagina. He suddenly stopped when R.B.'s mother got home from work and walked into the room. A.A. told R.B. what had happened when they went to A.A.'s house. A.A. reported the assault to a school counselor a week later.

On June 1, 2011, R.B. used her cellphone to secretly record Appellant touching her inappropriately. After K.B. saw the video, she took R.B. to the Sheriff's Office rather than telling their mother because she was afraid that her mother or Appellant would delete the videos. Law enforcement conducted an investigation and a grand jury returned three indictments against Appellant.

## EXCLUSION OF POLYGRAPH EVIDENCE

In Issues One and Two, Appellant contends that the trial court abused its discretion by excluding evidence that he had taken and passed a polygraph examination in 2009. Toby Crow is an investigator with the Denton County Sheriff's Office. Investigator Crow was assigned to investigate R.B.'s and K.B.'s allegations against Appellant. Investigator Crow observed the interviews of K.B. and R.B. at the Child Advocacy Center through a one-way glass, but he did not actively participate in those interviews. He interviewed Appellant on November 13, 2009. During a two-minute portion of the interview, Crow asked Appellant whether he would take a polygraph and Appellant agreed. At trial, the State sought to introduce the interview, but the prosecutor requested a hearing outside of the jury's presence to address the State's contention that the polygraph portion of the interview should be redacted. Appellant's attorney argued that the video should not be redacted to remove the discussion about a polygraph examination and he specifically stated that he did not want to introduce the results of the polygraph. The State

responded that polygraph evidence is inadmissible. The trial court ruled that the video would be admitted without the polygraph portion. The jury returned to the courtroom and the State offered the redacted version of the video, State's Exhibit 22. Appellant affirmatively stated he had no objection and the trial court admitted it. The video was then played for the jury.

Investigator Crow also interviewed K.S. and he observed that she appeared to be torn between what her daughters were saying and what Appellant was saying. After speaking with Appellant, K.S., R.B., and K.B., he decided not to file a case against Appellant or send the case to the District Attorney's Office. The following exchange occurred during redirect examination:

> [State]: And you would agree with me that at least nowhere in your report does it make any mention of the fact that the girls had been at the [Child Advocacy Center] the year before to talk about allegations that had come out to CPS in 2008?
>
> [Crow]: No.
>
> [State]: Okay. And you can't say for certain whether or not you knew about that when you did this investigation?
>
> [Crow]: That's correct.
>
> [State]: Okay. And in 2009 you didn't have the benefit of -- of video of him touching [R.B.]; is that correct?
>
> [Crow]: The only thing I had the benefit of in 2009 was testimony of [K.B.] and [R.B.], testimony of [K.S.] and the testimony of [Appellant]. There was no other evidence.

In a hearing outside of the jury's presence, Appellant argued that Crow's testimony that there was no other evidence than the statements of the people involved had left a false impression with the jury that he did not conduct any additional investigation. Appellant asserted that he should be permitted to question Crow about the polygraph examination and the redacted portion of the video should be admitted into evidence. The trial court denied Appellant's requests.

*Standard of Review*

- 5 -

A trial court has broad discretion in determining the admissibility of evidence. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App. 1991). Consequently, an appellate court reviews a trial court's decision admitting or excluding evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010). The trial court's ruling will be overturned only if it is so clearly wrong that the ruling lies outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh'g). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003). We will not overturn the trial court's decision so long as it is correct under any theory of law applicable to the case and the decision is within the zone of reasonable disagreement. *See Ramos v. State*, 245 S.W.3d 410, 418 (Tex.Crim.App. 2008).

It has long been the rule in Texas that the existence and results of polygraph examinations are inadmissible for all purposes. *Tennard v. State*, 802 S.W.2d 678, 683 (Tex.Crim.App. 1990); *Robinson v. State*, 550 S.W.2d 54, 59 (Tex.Crim.App. 1977); *Nichols v. State*, 378 S.W.2d 335, 337 (Tex.Crim.App. 1964); *Hoppes v. State*, 725 S.W.2d 532, 536 (Tex.App.--Houston [1st Dist.] 1987, no pet.). There are two primary reasons for excluding polygraph evidence: (1) the inherent unreliability of a polygraph test and (2) the tendency for the results to be unduly persuasive. *Martines v. State*, 371 S.W.3d 232, 250 (Tex.App.--Houston [1st Dist.] 2011, no pet.); *Marcum v. State*, 983 S.W.2d 762, 765 (Tex.App.--Houston [14th Dist.] 1998, pet. ref'd); *Russell v. State*, 798 S.W.2d 632, 635 (Tex.App.--Fort Worth 1990, no pet.); *see Romero v. State*, 493 S.W.2d 206, 210-11 (Tex.Crim.App. 1973), *overruled on other grounds by Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App. 1992)(noting that polygraph evidence has generally been excluded due to potential sources of error in the test itself, including

- 6 -

the competency of the examiner, the tendency of the jury to place too much reliance on the test results, the lack of standardization of test procedures, and the difficulty for jury evaluation of examiners' opinions). In limited instances, the erroneous admission of polygraph evidence may "open the door" to further inadmissible evidence regarding the polygraph results. *See Long v. State*, 10 S.W.3d 389, 398-99 (Tex.App.--Texarkana 2000, pet. ref'd), *citing Lucas v. State*, 479 S.W.2d 314, 315 (Tex.Crim.App. 1972) and *Patteson v. State*, 633 S.W.2d 549, 552 (Tex.App.--Houston [14th Dist.] 1982, no pet.).

Appellant asserts that the polygraph evidence and results became admissible to correct the misleading impression left by Investigator Crow's testimony that he did not present the case to the District Attorney's Office because he only had the interviews with K.B., R.B., K.S., and Appellant, and "[t]here was no other evidence." Appellant cites *Lucas v. State* in support of his argument that this testimony "opened the door" to admission of the polygraph evidence. In *Lucas*, the defendant testified that he had an agreement with the district attorney to take a polygraph, and if he passed, the district attorney would dismiss the case. *Lucas*, 479 S.W.2d at 315. The defendant also introduced evidence that the polygraph results showed he was not the person who had assaulted the complainant. *Id.* The trial court permitted the district attorney to testify that the defendant did not pass the polygraph test. *Id.* The Court of Criminal Appeals held that the defendant, by introducing the polygraph evidence, opened the door for the State to introduce the district attorney's testimony. *Id.*

The instant case is readily distinguishable from *Lucas* because the State did not introduce any evidence regarding the polygraph examination. The question in *Lucas* was whether the inadmissible evidence introduced by the defendant about the polygraph examination opened the door for the State to introduce equally inadmissible evidence about the polygraph results. That is

not the question here. Instead, we are asked to determine whether the State, by introducing admissible evidence which did not directly or even indirectly refer to a polygraph test, opened the door to inadmissible polygraph evidence. The Court of Criminal Appeals rejected such a claim in *Robinson v. State*, 550 S.W.2d 54 (Tex.Crim.App. 1977).

In *Robinson*, a capital murder case, the defendant met two other men, Smith and Holden, at a bar and agreed to drive them to an undisclosed place to gamble. *Robinson*, 550 S.W.2d at 55. Holden loaned Robinson a .22 caliber pistol and drove them to a location under Smith's directions. *Id.* Holden waited in the car while Robinson and Smith, both armed with pistols, left for approximately fifteen minutes. *Id.* When they returned, they were running and carrying a cigar box which contained currency and a .38 caliber pistol and holster. *Id.* Holden testified against Robinson at trial. *Id.* He said that Robinson, who was still carrying the .22 caliber pistol, told him that he had to shoot someone in the head at a grocery store. *Id.* at 55-56. They subsequently drove to another man's house and divided the proceeds of the robbery. *Id.* at 56. Robinson again stated that he had shot the man in the head. *Id.* The pistol Holden loaned to Robinson was identified as the murder weapon. *Id.* In a hearing outside of the jury's presence, it was established that Holden had entered into a plea bargain whereby he would testify for the State in exchange for probated sentences in the robbery and murder cases. *Id.* The State also required Holden to take a polygraph test and pass the test. *Id.* The trial court excluded the polygraph evidence. *Id.*

Holden's attorney testified at trial about the plea bargain. Defense counsel asked him whether Holden had been promised that he would receive no punishment in excess of probation on the two pending indictments against him and the attorney replied affirmatively. *Id.* at 57. The State then elicited testimony by the attorney that the plea bargain was contingent upon

Holden taking a polygraph test and passing it. *Id.* at 57-58. On appeal, the State cited *Lucas* and argued that the defense question about the plea bargain opened the door for the State to introduce the evidence regarding the polygraph exam and results. *Id.* at 60. The Court of Criminal Appeals found *Lucas* distinguishable because defense counsel did not question the witness about polygraph evidence. *Id.* The Court declined to hold that the polygraph evidence became admissible to correct a false impression because that would be in effect using a test which has been deemed unreliable to dispel a false impression. *Id.* Finally, the Court rejected the State's theory that a false impression had been created by defense counsel's question to Holden's attorney as to whether Holden had been promised "he will receive no punishment in excess of probation" for testifying. *Id.*

Like the Court of Criminal Appeals in *Robinson*, we decline to hold that the inherently unreliable polygraph evidence became admissible to dispel an alleged misleading impression. *See Robinson*, 550 S.W.2d at 60. Investigator Crow's testimony did not create a misleading impression in the mind of the jury. Crow testified that he did not present the case to the District Attorney's Office in 2009 because the only "evidence" he had was the statements from Appellant, the two complainants, and their mother, who was torn between what her daughters were saying and what Appellant was saying. All of the evidence Crow referenced in his testimony was admissible. Crow had over twenty-seven years' experience in criminal investigations and he presumably knew that polygraph evidence is inadmissible. As the sponsoring witness of State's Exhibit 22, Investigator Crow was present during the hearing conducted outside of the jury's presence and he was in the courtroom when the interview was played for the jury so he was aware that the portion of the interview where he discussed a polygraph examination with Appellant had been muted. Considered in context, Crow's reference

to "evidence" meant admissible evidence. Thus, his testimony was not false or misleading. We conclude that the trial court did not abuse its discretion by excluding evidence about the polygraph examination and the results. *See Robinson*, 550 S.W.2d at 60. We overrule Issues One and Two and affirm the judgment of the trial court.

ANN CRAWFORD McCLURE, Chief Justice

October 10, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating

(Do Not Publish)

- 10 -